NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **BODENSEE FUND, LLC, et al.,** | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: 07-3209 (MLC) |
| | : | |
| v. | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | MEMORANDUM OPINION |
| **DEPARTMENT OF THE TREASURY,** | : | |
| **INTERNAL REVENUE SERVICE** | : | |
| | : | |
| Defendant. | : | |
| | : | |

**BONGIOVANNI, Magistrate Judge,**

Petitioners, Bodensee Fund, LLC ("Bodensee") and Queen Trading, LLC ("Queen"), filed a petition with this Court on July 11, 2007 to quash third-party summonses that Respondent, the United States of America, Department of the Treasury, Internal Revenue Service ("IRS"), issued to Frank Koretsky ("Koretsky"). In response, on February 21, 2008, the IRS opposed Petitioners' petition to quash and moved for summary enforcement of its summonses. After considering each party's arguments, the Court finds that Petitioners' request should be denied, and that the IRS's Motion to Enforce its summonses should be granted.

**I.     Background**

Bodensee and Queen are limited liability companies that are registered in Illinois but conduct their consumer debt collection business primarily in Brazil. Both companies elected partnership status with the IRS for tax-filing purposes, and file income and expense information on IRS Form 1065. As a result, each company's income or loss flows to its partners as a percentage of each partner's ownership. The income or loss is factored into the partner's taxable liability. Koretsky

indirectly owns 48.51% of Bodensee, and 48.01% of Queen.

The IRS, under the supervision of Agent Larry Weinger ("Agent Weinger"), has been investigating the tax-return filings by Bodensee for the year ending December 31, 2004, and tax filings by Queen for the years ending December 31, 2003 and December 31, 2004. The IRS has also been investigating the tax return filings of Koretsky because the correctness of Petitioners' tax returns affects the correctness of Koretsky's returns.

Specifically, the IRS investigations focused on financial transactions by Petitioners characterized as Distressed Asset and Debt ("DAD") tax shelters. Under a DAD tax shelter, U.S. companies doing business in foreign countries purchase high-basis, low-value consumer debt from foreign entities for a small percentage of the debt's face value. The U.S. companies – either directly or through various intermediary entities – "write-down" the debt by using the high-basis rather than electing to adjust the actual value pursuant to 26 U.S.C. §754. With a high-cost basis and low-value, the transaction provides the partnership with a steep loss that reduces each partner's federal income tax liability. The IRS estimates that U.S. taxpayers used DAD tax shelters to claim losses of $39,000,000 in 2003 and $119,000,000 in 2004. The current action before the Court represents one of more than a dozen similar petitions to quash IRS-issued summonses in connection with DAD shelters.

The IRS published a Coordinated Issue Paper ("CIP") on April 18, 2007 discussing DAD tax shelters and the IRS's authority to disallow certain losses that taxpayers claim from DAD transactions. Several grounds for disallowance addressed in the CIP that Agent Weinger referred to in his January 16, 2008 deposition include failure to comply with, or abuse of, certain portions of the Internal Revenue Code ("IRC"), and incompatibility with judicial doctrines like step-transaction,

lack of economic substance, substance over form, and lack of profit motive.

On June 21, 2007, Agent Weinger and his team issued two summonses to Koretsky to give testimony and produce documents related to his investment in Bodensee and Queen. Agent Weinger testified that he believed Koretsky possessed the summoned information given Koretsky's investment in Bodensee and Queen.

**II.     Discussion**

In order to enforce its summonses, the IRS has the initial burden to demonstrate that the summonses were issued in good faith by making a *prima facie* showing: (1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already within its possession; and (4) that the administrative steps required by the Internal Revenue Code have been followed. *United States v. Powell*, 379 U.S. 48, 57-58 (1964). The IRS's burden is slight, it only needs to make a minimal showing to establish its *prima facie* case. *Liberty Fin. Services v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985). Generally, the IRS makes this showing through the deposition testimony of its agent who issued the summonses. *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 68 (3d Cir. 1979). Here, the IRS relies on Agent Weinger's deposition.

Once the IRS makes its *prima facie* case, the burden shifts to Petitioners to demonstrate that the IRS did not issue the summonses in question in good faith and that enforcement would constitute an abuse of process by the Court. *Powell*, 379 U.S. at 58. Despite Petitioners claims to the contrary, Petitioners, in order to overcome the IRS' *prima facie* case, are not simply required to make "a short and plain statement" showing that they are "entitled to relief" pursuant to FED.R.CIV.P. 8(a)(2). Petitioners' reliance on Rule 8 is misplaced because it ignores the fact that Rule 8 does not govern

this matter; instead, *Powell* and the progeny of cases that follow do. Consequently, Petitioners, unlike the IRS, bear a heavy burden in establishing that the IRS summonses were not issued in good faith. *See Liberty Financial*, 778 F.2d at 1392. For the reasons explained below, Petitioners fail to carry their heavy burden. Petitioners, similarly fail to establish that the summonses at issue are unconstitutional.

### A.  Legitimate Purpose

The IRS is authorized to issue summonses to verify the accuracy of any tax return, and the taxable liability of any taxpayer. 26 U.S.C. §7602(a). Agent Weinger testified that the purpose of the summonses issued to Koretsky was to examine the correctness of tax returns filed by Bodensee, Queen, and Koretsky, as well as their involvement in DAD tax shelters. Agent Weinger's testimony establishes a legitimate purpose for the IRS's investigation. Thus, the IRS has carried its burden with respect to the first element of the *Powell* test.

Petitioners attempt to rebut the IRS's argument and claim that the IRS's investigation was not conducted in accordance with a legitimate purpose, and that the IRS knew Petitioners' DAD transactions were not "abusive tax shelters." Specifically, Petitioners argue that the IRS's purpose in issuing the summonses was to harass Petitioners, to use the summonses as a pre-litigation discovery tool, and to extend the statute of limitations. Each of these arguments is addressed in turn.

### Harassment

In order to succeed on their argument that the IRS' purpose in issuing the summonses at issue was to harass, Petitioners must demonstrate that the IRS maintained an institutional posture of harassment towards them. *Arlington Heights v. I.R.S.*, 109 F.3d 1221, 1226 (7th Cir. 1997). The conduct of individual agents is controlling insofar as it establishes an institutional posture of

4

harassment. *Id.* at 1226.

Petitioners first argue that the IRS harassed them by offering to settle with individual investors, then threatening penalties in the event that the individuals refused. Agent Weinger acknowledged that the IRS extended such settlement proposals to investors. Petitioners, however, provide no evidence that the IRS, in fact, made any threats upon any who refused to settle. Furthermore, Petitioners fail to establish standing on matters that involve potential settlements with third-parties.

Next, Petitioners claim that IRS Agent Ray Tabor ("Agent Tabor") threatened Petitioners' attorney, Sweta Shah ("Shah"), with disciplinary action for failing to timely comply with the IRS's Information Document Requests during a November 2006 telephone discussion. Petitioners argue that Agent Weinger admitted in his deposition that the IRS made the aforementioned threat to Shah. In fact, Agent Weinger testified that the IRS made no threat. Instead, Agent Weinger explained that the IRS audit team told Shah that her repeated failure to comply with the IRS's requests could result in disciplinary action. Petitioners fail to establish that the disciplinary action contemplated by the IRS was inappropriate.

Petitioners also claim that the IRS threatened Shah in a letter written to her by IRS Agent Elise Gardner ("Agent Gardner") regarding "two entities similarly situated to petitioners." (Pet'r Br. at 10). Petitioners argue that Agent Weinger's testimony that the IRS made no threats to Shah was inappropriate because he was not acting on first-hand information as required by *Maldonado v. Ramirez*, 757 F.2d 48 (3d Cir. 1985). Petitioners' reliance on *Maldonado*, however, is misplaced; *Maldonado* ruled that an affidavit comports with FED.R.CIV.P. 56(e) when the affiant testifies to personal knowledge. *Id.*, at 50. Compliance with summary judgment standards, however, is not an

issue before the Court in this action. Furthermore, as with Agent Tabor's telephone discussion with Shah, Petitioners provide no evidence that the IRS's potential course of action regarding the disciplinary procedures outlined by Agent Gardner was inappropriate.

Further, just as the alleged threats to Shah fail to establish harassment on their own terms, they likewise do not illustrate that the IRS adopted an institutional posture of harassing Petitioners. Petitioners argue that an IRS memorandum signed by twenty-one IRS executives demonstrates an institutional posture of harassment towards them, as the memorandum allegedly outlines the IRS's "policy designed to capture as 'tax shelter transactions' or 'abusive transactions' petitioners' lawful bad business debt deductions." (Pet'r Br. at 12). While Petitioners state that the IRS first refused to acknowledge the existence of such a document, then failed to produce it based on the deliberative process privilege, they have not distinguished such a memorandum from the IRS's stated objective of examining Petitioners' DAD transactions, nor have they demonstrated the impropriety thereof.

For these reasons, the Court finds that Petitioners have failed to carry their burden with respect to their claim that the IRS's purpose in issuing the summonses at issue was to harass Petitioners.

Pre-litigation Discovery Tool

Petitioners next argue that the IRS issued the summonses in question as a pre-litigation discovery tool in order to circumvent the more restrictive discovery rules adhered to in Tax Court. Petitioners allege that this use establishes that the summonses were issued for an improper purpose. *See PAA Mgmt., Ltd. v. United States*, Nos. 91 C 168, 91 C 169, 91 C 170, 1992 WL 346314 (N.D. Ill. Nov. 19, 1992). As evidence, Petitioners state that Agent Weinger told them that the IRS's audit team was guided by district counsel, and that counsel planned to litigate regardless of the audit's

outcome.

Contrary to Petitioners' reading of *PAA Management*, that court held that there was evidence of improper purpose by the IRS because the IRS acknowledged that the documents it requested were unnecessary for the completion of its examination. *Id*. at *6. Here, Petitioners provide no evidence that the IRS made similar statements about the necessity of the documents it seeks through the summonses issued to Koretsky. Instead, Petitioners merely argue that the IRS's district counsel communicated with Agent Weinger's audit team regarding their audit. However, Petitioners provide no basis for determining that that communication was improper.

Petitioners also argue that the IRS's improper purpose of attempting to circumvent the narrower discovery rules applied in Tax Court is evidenced by the fact that the IRS issued a Final Partnership Administrative Adjustment ("FPAA") to Queen disallowing Petitioners' deductions while it still needed documents for its determination of the correctness of Petitioners' tax returns. Put succinctly, Petitioners' argument is that because the FPAA issued while the IRS still claims a need for documents to determine the legitimacy of Petitioners' and Koretsky's tax returns, the legitimacy of which is currently being litigated in Tax Court, the only use for the summoned documents is to prove the IRS's case in Tax Court - a clear circumvention of the Tax Court's discovery rules.

Petitioners' argument fails for several reasons. First, their argument is problematic because its force lies in conceding precisely what Petitioners must disprove: that the IRS had a legitimate purpose in verifying the correctness of Petitioners' tax returns. Petitioners cannot meet their heavy burden even by demonstrating that the IRS had an illegitimate purpose without also disproving the purported legitimate one. Second, while an FPAA reflects the IRS's disposition of a partnership's

7

tax filing, it does not cutoff the IRS's authority to request documentation from the taxpayer. *See PAA Mgmt v. United States*, 962 F.2d 212, 219 (2d Cir. 1992). With respect to the validity of an IRS summons that has been issued where an FPAA has also been issued, this Court agrees with the holding Second Circuit's holding in *PAA Management*. In *PAA Management*, the Second Circuit found that because the IRS issued the summonses several weeks before the Tax Court proceedings began, and before the IRS issued the FPAA, the summonses at issue were valid. *Id*. Indeed, the Second Circuit went even further, finding that "the prospect of an eventual court challenge by a taxpayer or similar entity to an IRS determination" does not deprive the IRS of its summons authority. *Id*. Here, the IRS issued the summonses before the relevant Tax Court proceedings began, and before it issued the aforementioned FPAA. Consequently, the Court finds that Petitioners have not established that the IRS issued the summonses in question simply as a pre-litigation discovery tool in order to circumvent the more restrictive discovery rules applicable in Tax Court.

Extension of the Statute of Limitations

Generally, the IRS is authorized to audit tax returns within three years of their filing. 26 U.S.C. §6501(a). Petitioners argue that the IRS issued the summonses here to extend the statute of limitations and to retain audit power beyond this three-year period. However, as the IRS argues, the statute of limitations does not toll upon the issuance of a summons, but instead upon the filing of a petition to quash. 26 U.S.C. §7609(e)(1). Rather than challenge the applicability of §7609, Petitioners argue, in effect, that this Court should ignore that provision because the IRS's summonses were improper. Indeed, Petitioners state that "the IRS should not be able to hide behind a technicality when, in fact, it was the issuance of the improper summonses that caused the litigation." (Pet'r Br. at 16).

However, the very issue that must be decided by this Court is the propriety of the summonses at issue. Here, Petitioners have completely failed to establish that the summonses in question were issued for an improper purpose. Without proof that the IRS' summonses were issued for an improper purpose, Petitioners' arguments regarding the statute of limitations are circuitous and without merit.

### B.     Relevance

The relevance of an IRS-issued summons is not measured by whether the information sought is admitted as evidence in court proceedings, or that the sought-after documents "are actually relevant in any technical, evidentiary sense." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). Rather, a summons is relevant if the documents it pertains to "have the potential to shed some light" on the relevant tax returns. *Arlington Heights*, 109 F.3d at 1224

In Agent Weinger's deposition, he testified that the summonses at issue included six document requests related to Petitioners' DAD transactions. Specifically, the documents related to: legal or tax advice; anticipated tax benefits; engagement letters, invoices and billing records for legal, management or tax advice; and correspondence and notes of discussions regarding Bodensee and Queen. Agent Weinger averred that each category of documents pertained to the IRS's stated purpose of ascertaining the correctness of Petitioners' and Koretsky's tax returns. Agent Weinger also stated that Koretsky should have possession of the requested information because he was an investor in Bodensee and Queen.

Petitioners argue that the summonses are overly broad and therefore not relevant because each of the six requests call for the production of "all" of the specified type of information. As discussed in more detail below, Petitioners' arguments are unpersuasive, and their use of case law

9

is inaccurate.

For example, contrary to Petitioners' argument, the court in *Racca v. United States*, No. C06-1822RSM, 2007 WL 1108872 (W.D. Wash. April 11, 2007), did not find it unrealistic that "all" the information the government requested would help determine the correctness of the taxpayers' tax return. Rather, *Racca* found that the government did not meet its burden to show that the information sought could help with such a determination, particularly since some of the documents the government sought were from two to four years after the tax years the government was investigating. *Id*. at *3. Petitioners do not argue about the relevance of any particular document the IRS seeks, nor do they argue that any of the requested documents are dated after the time period of the IRS's investigation.

Similarly, Petitioners reliance on *United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973) is misplaced. While the *Theodore* court did find that the government's request for documents was overly broad, its decision was not based on the fact that the government asked for "all" of a particular kind of document. Instead, the court found that the government's request was overly broad because it targeted unidentified third-party clients of the accounting firm that the IRS was investigating. *Id*. at 754. The court found that searching client records of an accounting firm based on the possibility of finding improper reporting was not warranted. *Id*. Here, no unidentified third-party is at issue; the IRS issued summonses to Koretsky who invested in Bodensee and Queen, and both companies are potentially involved in improper DAD transactions.

Likewise, *United States v. Lewis*, 604 F.Supp. 1169 (E.D. L.A. 1985), also cited by Petitioners, is distinguishable. Petitioners' arguments notwithstanding, the *Lewis* court did not find that the IRS failed to establish relevance because the government requested "all" documents.

Instead, *Lewis* ruled that the IRS's summonses were overly broad because they created an unenforceable scenario: the summonses requested "all relevant documents," effectively requiring the summoned party to determine which documents to produce, thus making judicial enforcement ineffective. *Id*. at 1172. Here, the IRS specified which documents it seeks and therefore we are not presented with the same issue addressed in *Lewis*.

Further, Petitioners argue that Agent Weinger admitted that the IRS's summonses were overbroad. Petitioners, however, cite to no specific instance of Agent Weinger's alleged admission. Instead, Petitioners explain that in another similar matter involving different taxpayers, Agent Weinger did not accept a 104-page legal opinion or "samples" of payment documents produced in response to IRS summonses because they were not the summoned party's copies of the documents. In response, the IRS argues that there are times when it needs to obtain particular documents directly from the summoned party in order to in part compare documents among entities and partners. The Court finds the IRS's reasons for seeking documents directly from the summoned party, even where similar information has already been produced from other sources, to be sound, and therefore rejects Petitioners' argument in this regard.

Petitioners also argue that the IRS's interest in Koretsky's motives for engaging in DAD transactions is improper because subjective intent is irrelevant to such an inquiry under *United States v. Generes*, 405 U.S. 93 (1972). *Generes*, however, did not address DAD transactions, but rather focused on whether the taxpayer's bad debt was deductible as a business-related expense. Therefore, Petitioners' reliance on *Generes* is misplaced. Similarly, Petitioners reliance on *Harsha v. United States*, 590 F.2d 884 (10th Cir. 1979), is misplaced because *Harsha* also involved a bad debt categorization inquiry. Moreover, regardless of the fact that *Generes* and *Harsha* analyzed intent

11

in a different context than the case at bar, neither supports Petitioners' argument. Indeed, despite Petitioners' claims to the contrary, these cases did not hold that subjective factors were irrelevant to intent.

Consequently, Petitioners have failed to establish that the IRS's summonses lack the requisite relevance.

### C. Information Already in Government's Possession

Agent Weinger testified in his deposition that the IRS does not possess the information it sought in the summonses at issue here. Furthermore, Agent Weinger testified that while third-parties had provided some documents to the IRS, Petitioners and Koretsky had not. The Court finds that through this testimony, the IRS met its light burden in establishing a *prima facie* case that the IRS does not already possess the information requested in the summonses issued to Koretsky.

Petitioners respond by arguing that the IRS already possesses most of the documents it requested. Petitioners list four types of records that have already been provided to the IRS. However, Petitioners do not identify Koretsky as the party who produced the documents, nor do Petitioners state that the documents belonged to Koretsky. Furthermore, the documents listed by Petitioners are either "samples" or "examples" of the items that the IRS summoned. Petitioners cannot, however, meet their heavy burden by stating that documents have been produced without establishing that they were produced by Koretsky. Nor can Petitioners meet their burden by producing samples and examples of documents in response to the IRS' summonses for specific documents. Moreover, the IRS has authority to request information from a party that it already obtained from other sources to compare records and verify consistency. *See PAA Mgmt.*, 1992 WL 346314, at *5 (N.D. Ill. 1991); *Cohen v. United States*, 306 F. Supp. 2d 495, 504 (E.D. Pa. 2004).

### D. Compliance with Administrative Steps

Agent Weinger testified in his deposition that the IRS followed all Internal Revenue Code procedures in issuing its summonses to Koretsky. Petitioners, however, argue that the IRS failed to provide concurrent notification to Petitioners' designated representatives of the third-party summonses pursuant to IRC §7602 and Treasury Regulation §601.506(a). Petitioners also argue that the IRS is required to provide notification to Petitioners' counsel within three days of issuing its summonses to any third-party.

Internal Revenue Code §7602 does not, as Petitioners argue, require the IRS to notify taxpayers' representatives when issuing third-party summonses. Section 7602 instructs the IRS to notify first the taxpayer before issuing summonses to third-parties. Petitioners do not argue that the IRS failed to notify them of the Koretsky summonses. Rather, Petitioners argue that the IRS failed to notify their legal representatives.

Treasury Regulation §601.506(a) instructs the IRS to give notice to the taxpayer and the taxpayer's representative of summonses. Petitioners do not argue that the IRS did not notify them; rather, they argue that the IRS failed to notify their legal representatives. Petitioners, however, overlook the fact that failure to notify a party's legal representation will not invalidate the "notice or written communication." Treas. Reg. §601.506(a)(3). As a result, Petitioners' arguments in this respect are unpersuasive.

For all of these reasons, Petitioners have failed to overcome the IRS's *prima facie* case that the summonses in question were issued in good faith.

### E. Constitutionality

In addition to arguing that the summonses in question were not issued in good faith, Petitioners also argue that they violate the United States Constitution because the summonses: 1) violate Petitioners' First Amendment rights to freedom of speech and to petition the government; 2) violate Petitioners' Fifth Amendment right to due process of law; and 3) violate judicial review principles under Article III.

First Amendment

Petitioners argue that the documents the IRS requested in its summonses constitute speech protected under the First Amendment. While not explicit, Petitioners appear to argue that the summonses at issue violate their First Amendment rights because if enforced, they would effectively allow the government to enjoin parties from engaging in certain tax-related discussions. As an initial matter, the Court finds Petitioners' argument to be unpersuasive because communications that facilitate unlawful tax schemes are not protected under the First Amendment, and injunctions against such communications do not violate a taxpayer's freedom of speech. *See United States v. Bell*, 414 F.3d 474, 484 (3d Cir. 2005). Second, even assuming that Petitioners' and Koretsky's communications are protected speech, Petitioners' arguments are of no moment because the IRS is not seeking to enjoin Petitioners from communicating. Indeed, the sole case that Petitioners rely upon in support of this argument is clearly distinguishable from the case at bar. In *United States v. Trader's State Bank*, the court did not actually address the appellant's first amendment argument because it disposed of the case on other grounds. 695 F.2d 1132, 1133 (9th Cir. 1983). *Trader's State Bank* is also clearly distinguishable because the appellant in *Trader's State* was a church, and the issue in the case concerned the church's freedom of association and freedom of religion. *See Id*.

Thus, Petitioners' First Amendment freedom of speech arguments fail.

Further, Petitioners have provided no support for their argument that the summonses violate their First Amendment right to petition the government. The IRS has authority to summon documents to ascertain the correctness of a taxpayer's tax returns or taxable liability. 26 U.S.C. §7602(a). Any party in receipt of a summons can petition to quash it, and thereby oppose the government's right to obtain the information sought. Petitioners disregard this petition process, and offer the Court nothing to support its argument.

### Fifth Amendment

Petitioners argue that the summonses in question should be quashed because their enforcement would deprive Petitioners of their property without due process of law. The property that the IRS seeks belongs to Koretsky, not Petitioners. Petitioners argue that they nevertheless have standing to object because they bear the burden of complying with the summonses; however, Petitioners offer no law in support of this position. The Court, however, need not address the standing issue because it agrees with the IRS that even if Petitioners had standing, they are afforded due process through the right to petition to quash the IRS's summonses. *See* 26 U.S.C. §7609(b)(2).

### Article III Judicial Review

While Petitioners argue that the IRS's summonses "violate [A]rticle III separation of power principles by snuffing out any meaningful judicial review[,]" (Pet'r Br. at 37) they provide no support for said argument. Further, as the IRS indicated, judicial review procedures for taxpayers to challenge IRS issued summonses are provided for by statute.

**F.    Discovery and Evidentiary Hearing**

Finally, Petitioners argue that they are entitled to discovery and an evidentiary hearing

15

because they have "alleged a myriad of facts, supported by affidavits" (Pet'r Br. at 5) to refute the IRS's *prima facie* case, and because their burden would otherwise be too difficult to meet. Taxpayers are not entitled to discovery or an evidentiary hearing unless they can refute the IRS's case or "factually support a proper affirmative defense." *Garden State*, 607 F.2d at 71. Furthermore, evidentiary hearings are not proper unless the taxpayer's affidavit allows the district court to infer that the taxpayer can rebut the IRS's *prima facie* case; allegations and conclusions of law are insufficient to necessitate an evidentiary hearing. *United Sates v. Gippetti*, 248 Fed. Appx. 382 (3d Cir. 2007); *see also Garden State*, 607 F.2d at 71. Petitioners have not met their burden; they have not refuted the IRS's *prima facie* case, they have not provided factual support with respect to any affirmative defense, nor have they demonstrated that they could if they were afforded discovery.

### III.   Conclusion

For the foregoing reasons, the Court DENIES Petitioners' petition to quash the summonses and GRANTS the Respondent's Motion to Enforce. An appropriate Order follows.

Dated: September 30, 3008

                                                    s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**